CLYDE & CO US LLP
Justin S. Hepworth  (Idaho Bar No. 12687)
7251 West Lake Mead Boulevard, Suite 430
Las Vegas, Nevada 89128
Telephone No.: 725-248-2900
Facsimile No.: 725-248-2907
E-Mail: justin.hepworth@clydeco.us

*Attorneys for Plaintiff Great American E&S Insurance Company*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GREAT AMERICAN E&S INSURANCE COMPANY, a foreign corporation,<br><br>Plaintiff,<br><br>v.<br>NORCO, INC., an Idaho corporation,<br><br>Defendant. | No.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff Great American E&S Insurance Company ("Great American"), for its Complaint for Declaratory Judgment against Defendant Norco, Inc. ("Norco" or "Defendant") alleges as follows:

## INTRODUCTION

1. This is an action for declaratory relief regarding the parties' rights and obligations under an insurance policy issued by Great American to Norco.

2. David Spargur ("Spargur") asserted claims against Norco and Russ Miller relating to a June 2022 incident when he fell from his wheelchair after the brakes failed resulting in reinjury to his amputated leg necessitating further surgical intervention (the "Underlying Claim").

3. Great American seeks a declaration that it does not have any obligation to indemnify Norco with respect to the Underlying Claim or any other claims by Spargur arising out of the incident giving rise to his purported injuries.

## THE PARTIES

4. Great American is an Ohio corporation with its principal place of business in Cincinnati, Ohio. Great American is a surplus lines insurance company, eligible to underwrite surplus lines insurance in all states, including the State of Idaho.

5. Upon information and belief, Defendant Norco is an Idaho Corporation, with its principal place of business in Boise, Idaho.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and the amount in controversy, exclusive of fees and costs, is in excess of seventy-five thousand dollars ($75,000.00).

7. This action is brought pursuant to 28 U.S.C. § 2201, the Declaratory Judgment Act, which provides for this Court to adjudicate a party's rights and other legal remedies in an actual controversy.

8.     Venue is proper in the United States District Court for the District of Idaho pursuant to 28 U.S.C. § 1391(b)(1) because Norco is an Idaho corporation and the at issue insurance policy was issued in Idaho.

## GENERAL ALLEGATIONS

**The Underlying Lawsuit, Judgment, and Background Facts**

9.     Norco is in the business of providing medical equipment, including wheelchairs, to patients in the Pacific Northwest.

10.    After having his left leg amputated below the knee, Spargur acquired a wheelchair from Norco on or about June 7, 2022.

11.    Spargur alleges he suffered bodily injury and other damages on or about June 11, 2022, when he fell from his wheelchair after the brakes failed.

12.    Norco was aware of this Underlying Claim no later than June 14, 2022.

13.    On or about July 8, 2022, Spargur initiated a civil action against Norco and Russ Miller (a Norco employee) in the Superior Court of Washington, King County, captioned *Spargur v. Norco Inc., et al.*, Case No. 22-2-10637-9 SEA (the "Underlying Lawsuit"). A true and correct copy of the Complaint filed in the Underlying Lawsuit (7/8/22) is attached hereto as ***Exhibit 1***.

14.    Norco provided notice of the Underlying Lawsuit to its broker, the Leavitt Insurance Group ("Leavitt"), but Leavitt did not provide timely notice to any of Norco's insurers.

15.    Norco also did not provide timely notice of the Underlying Notice to its insurers or take any action to defend itself.

16.    On August 18, 2022, an Order of Default was entered against Norco. A true and correct copy of docket showing the default is attached hereto as ***Exhibit 2***.

17.    On December 12, 2022, a Default Judgment was entered against Norco. *See* Ex. 2.

18. On February 12, 2024, Spargur obtained a Final Judgment for $6,087,403.96 against Norco. A true and correct copy of the Final Judgment is attached hereto as *Exhibit 3*.

19. After Spargur moved for a Writ of Garnishment, Norco first provided Great American (and its other insurance carriers) with notice of the Underlying Claim. A true and correct copy of the Notice of Occurrence and Claim (5/10/24) is attached hereto as *Exhibit 4*.

20. Norco's primary insurer, Zurich American Insurance Company ("Zurich"), assigned defense counsel under reservation of rights.

21. Retained defense counsel moved to vacate the default judgment in the Underlying Lawsuit, but the court denied the motion. A true and correct copy of the Findings of Fact and Conclusions of Law (8/13/24) is attached hereto as *Exhibit 5*.

22. In the Findings of Fact and Conclusions of Law (Ex. 5), the court found:

> 2. Norco was properly served through its registered agent on July 15, 2022. On July 18, 2022, its registered agent provided the summon and complaint to Norco's CEO. A variety of corporate officers and employees within Norco knew of the summons and complaint. However, as the result of high staff turnover and confusion over internal responsibilities, no one at Norco took action to ensure that it responded to the lawsuit.
>
> 3. Norco provided the summons and complaint to its insurance broker on December 8, 2022. There is no evidence that any Norco employee requested that the broker notify the insurance carrier of the lawsuit.
>
> 4. As of December 8, 2022, no default order had been entered. The default order was entered on December 12, 2022 and first default judgment not entered until January 31, 2023.
>
> 5. On May 7, 2024, Norco learned of the final judgment entered on February 1, 2024, via a writ of garnishment. At that time, on May 7, 2024, Norco requested assistance of defense counsel from its insurance broker.
>
> 6. The events Norco identifies as causing its failure to appear or not seek a defense until May 7, 2024 do not constitute excusable neglect. Instead, those events represent a breakdown of internal

    accountability and/or tracking of the summons and complaint. Corporate officers, agents, and employees had notice of the lawsuit but did not take timely action.

23. The court in the Underlying Lawsuit further determined "Norco's failure to timely appear and answer was not due to excusable neglect" and therefore denied the motion to vacate the default judgment.

24. On or around August 13, 2024, after the court in the Underlying Lawsuit refused to vacate the default judgment and before the time to seek reconsideration or file a notice of appeal had expired, Norco voluntarily paid to Spargur the Final Judgment (plus interest) in the total amount of $6,419,472.

25. Prior to making the voluntary payment of the Final Judgment, Spargur did not consult with, notify or otherwise seek approval from Great American.

26. Norco waited until July 16, 2025, to seek indemnification from Great American for the amounts paid to satisfy the Final Judgment.

27. Upon information and belief, Zurich tendered to Norco, subject to a reservation of rights, its $1,000,000.00 limit towards the amounts paid to satisfy the Final Judgment.

28. Norco seeks reimbursement from Great American for the amount (in excess of the amount paid by Zurich) that it voluntarily paid to satisfy the Final Judgment.

**The Great American Excess Policy**

29. Great American issued Policy No. XS 2260340-04 to Norco, Inc. at its 1125 W Amity Road, Bosie, Idaho 83705 address for the policy period of July 1, 2021, to July 1, 2022 (the "Great American Excess Policy"). A true and correct copy of the Great American Excess Policy is attached hereto as *Exhibit 6*.

30. Subject to its terms, provisions, exclusions, conditions, limitations, declarations, and endorsements, the Great American Excess Policy provides the following excess liability coverage:

### EXCESS LIABILITY INSURANCE POLICY

Various provisions in this Policy restrict coverage. Read the entire Policy carefully to determine rights, duties and what is and is not covered.

Throughout this Policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this Policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under the "controlling underlying insurance". Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION V - DEFINITIONS**.

### SECTION I - INSURING AGREEMENT

Except for the terms, conditions, definitions and exclusions of this Policy, the coverage provided by this Policy will follow the "controlling underlying insurance".

We will pay on behalf of the insured "loss" in excess of the "underlying limits of insurance" shown in the Schedule of Underlying Insurance. If we are prevented by law or statute from paying on behalf of an insured, then where permitted by law or statute, we will indemnify the insured for those sums in excess of the "underlying limits of insurance".

If any "underlying insurance" contains a limitation, condition, exclusion or restriction of coverage not contained in the "controlling underlying insurance" then this Policy will follow form to such limitation, condition, exclusion or restriction of coverage. In no event will this Policy provide broader coverage in any respect than is provided in any "underlying insurance".

31. The aforementioned excess liability coverage is amended by the Underlying Sublimits endorsement [RUM 7009 (Ed. 11/17)] to add the following:

### Underlying Sublimits

If any "underlying insurance" provides coverage that is subject to a limit other than what is shown in the Schedule of Underlying Insurance, such as a sublimit, this insurance does not apply to any injury, damage or liability arising out of that exposure unless that coverage and the applicable limit is specified in the Schedule of Underlying Insurance.

32.     The aforementioned excess liability coverage has the following limits of insurance:

## SECTION II - LIMITS OF INSURANCE

The Limits of Insurance shown in the Declarations shall apply in an identical manner to the "controlling underlying insurance", except as follows:

A.      This Policy applies only in excess of the "underlying limits of insurance" shown in the Schedule of Underlying Insurance.

B.      The Each Occurrence limit stated in the Declarations is the most we will pay for all "loss" arising out of any one occurrence to which this Policy applies.

C.      The Aggregate Limit shown in the Declarations is the most we will pay for all "loss" that is subject to an aggregate limit provided by the "controlling underlying insurance", except:

    1.    If all "Underlying Insurance" contains an identical per project aggregate limit provision, then the Aggregate Limit will apply per project; or

    2.    If all "Underlying Insurance" contains an identical per location aggregate limit provision, then the Aggregate Limit will apply per location.

D.      This Policy will not apply to any portion of a "loss" or any defense costs and expenses that are within any of the following:

    1.    the "underlying limits of insurance";

    2.    any deductible or retention which is included as part of the "underlying limits of insurance"; or

    3.    any amount which you agree to fund by self-insurance.

E.      If the "underlying limits of insurance" are reduced by defense costs and expenses then the Limits of Insurance for this Policy will be reduced in a manner identical to the "underlying limits of insurance".

33. The aforementioned excess liability coverage is conditioned on maintenance of underlying insurance as follows:

**SECTION IV – CONDITIONS**

B.    Maintenance of Underlying Insurance

During the period of this Policy, you agree:

1. to keep the "underlying insurance" in full force and effect; and

2. that the limits of insurance of the "underlying insurance" will be maintained except for any reduction or exhaustion by payment of claims or suits for "loss" covered by "underlying insurance".

If you fail to comply with these requirements, we will only be liable to the same extent that we would have been had you fully complied with these requirements.

34. The Great American Excess Policy has the following relevant definitions:

**SECTION V - DEFINITIONS**

A.    **Controlling Underlying Insurance**

"Controlling underlying insurance" means the policy or policies of insurance stated as such in the Schedule of Underlying Insurance.

B.    **Loss**

"Loss" means those sums actually paid in the settlement or satisfaction of a claim or suit which an insured is legally obligated to pay as damages, after making proper deductions for all recoveries and salvage. "Loss" also includes defense costs and expenses but only when such costs and expenses reduce the "underlying limits of insurance".

C.    **Underlying Insurance**

"Underlying insurance" means the "controlling underlying insurance" and all policies of insurance listed in the Schedule of Underlying Insurance.

D.    **Underlying Limits of Insurance**

"Underlying limits of insurance" means the total sum of the limits of all applicable "underlying insurance" stated in the Schedule of Underlying Insurance, including self-insurance, deductibles, retentions or means other than insurance.

35. The Great American Excess Policy lists Commercial General Liability Policy No. GLO0381400-06 issued by Zurich American Insurance Company with effective dates of 07/01/2021 to 07/01/2022 with a $1,000,000 each occurrence limit ("Zurich Primary Policy") in the Excess Liability Insurance Policy Supplemental Schedule of Underlying Insurance.

36. The Great American Excess Policy provides up to $5,000,000 in excess coverage per occurrence and in the aggregate.

37. There is neither a provision in the Great American Excess Policy nor in the Zurich Primary Policy, that requires or allows Norco to provide notice of a claim to its broker instead of Great American.

**The Zurich Primary Policy**

38. Zurich issued the Zurich Primary Policy to Norco. A true and correct copy of the Zurich Primary Policy is attached hereto as *Exhibit 7*.

39. The Zurich Primary Policy's Commercial General Liability Coverage Form, which the Great American Excess Policy follows, provides the following conditions:

> **SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS**
> …
> **2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**
>
> **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
>
> **(1)** How, when and where the "occurrence" or offense took place;
>
> **(2)** The names and addresses of any injured persons and witnesses; and

      **(3)**    The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.**    If a claim is made or "suit" is brought against any insured, you must:

…

      **(2)**    Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.**    You and any other involved insured must:

      **(1)**    Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

…

      **(3)**    Cooperate with us in the investigation or settlement of the claim or defense against the "suit"…

**d.**    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

## COUNT ONE – DECLARATORY JUDGMENT

40. Great American incorporates by reference the allegations set forth in Paragraphs 1 through 39 above, as if each were fully set forth here.

41. The rights and obligations of Great American and Norco are affected by the terms and conditions of the Great American Excess Policy at issue and Idaho law.

42. Thus, an actual and justiciable controversy exists between Great American and Norco concerning the parties' rights and obligations under the Great American Excess Policy with respect to the Underlying Claim and Underlying Lawsuit.

43. By reason of the foregoing, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations, and liabilities that exist pursuant to the Great American Excess Policy with respect to the Underlying Claim and Underlying Lawsuit.

44. Great American does not owe Norco any indemnity because Norco failed to notify Great American of the Underlying Claim "as soon as practicable" but instead waited until almost two years later and after a default judgment was entered against Norco in the Underlying Lawsuit.

45. Great American does not owe Norco any indemnity because Norco failed to satisfy its condition precedent to "immediately" notify Great American of the Underlying Lawsuit and provide copies of the suit papers but instead waited almost two years later and after a default judgment was entered against Norco in the Underlying Lawsuit.

46. Great American does not owe Norco any indemnity because Norco failed to satisfy its condition precedent to make no voluntary payment without Great American's consent but instead voluntarily paid to Spargur the Final Judgment (plus interest) in the total amount of $6,419,472 without Great American's consent.

47. Because Norco failed to comply with the aforementioned conditions, the Great American Excess Policy does not provide indemnity coverage for the Underlying Claim or Underlying Lawsuit.

## **PRAYER FOR RELIEF**

WHEREFORE, Great American respectfully requests this Court enter judgment in its favor and against Defendant declaring as follows:

A. The is no coverage for Norco under the Great American Excess Policy because Norco failed to notify Great American of the Underlying Claim "as soon as practicable" but instead waited until almost two years later and after a default judgment was entered against Norco in the Underlying Lawsuit.

B. There is no coverage for Norco under the Great American Excess Policy because Norco failed to immediately notify Great American of the Underlying Lawsuit and

      provide copies of the suit papers but instead waited almost two years later and after a default judgment was entered against Norco in the Underlying Lawsuit.

C.     There is no coverage for Norco under the Great American Excess Policy because Norco voluntarily paid the Final Judgment without Great American's consent;

D.     For an award of costs and fees incurred in this matter, and such other relief as the Court deems just and proper.

Dated this 2nd day of October 2025.     CLYDE & CO US LLP

By: */s/ **Justin S. Hepworth***
Justin S. Hepworth (Idaho Bar No. 12687)
justin.hepworth@clydeco.us
7251 West Lake Mead Boulevard, Suite 430
Las Vegas, Nevada 89128
Telephone No.: 725-248-2900
Facsimile No.: 725-248-2907

*Attorneys for Plaintiff Great American E&S Insurance Company*