Justin S. Hepworth (Idaho Bar No. 12687)
CLYDE & CO US LLP
7251 West Lake Mead Boulevard, Suite 430
Las Vegas, Nevada 89128
Telephone No.: (725) 248-2900
Facsimile No.: (725) 248-2907
E-Mail: justin.hepworth@clydeco.us
*Attorneys for Plaintiff Great American E&S Insurance Company*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

GREAT AMERICAN E&S INSURANCE COMPANY, a foreign corporation,

Plaintiff,

v.

NORCO, INC., an Idaho corporation,

Defendant.

---

NORCO, INC., an Idaho corporation,

Third-Party Plaintiff,

v.

LEAVITT GROUP ENTERPRISES, INC., a Nevada corporation; LEAVITT GROUP OF BOISE, INC., an Idaho corporation; ARCHIBALD INSURANCE CENTER, INC., an Idaho corporation; and LEAVITT SELECT INSURANCE SERVICES, INC., an Idaho corporation,

Third-Party Defendant.

No. 1:25-cv-00562-AKB

**PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM & MOTION FOR JUDGMENT ON THE PLEADINGS ON THE DECLARATORY RELIEF CLAIM**

Plaintiff, Great American E&S Insurance Company ("Great American"), through its undersigned counsel, hereby submits this Motion to Dismiss Defendant's Counterclaim & Motion

for Judgment on the Pleadings on the Declaratory Relief Claim, and in support thereof, states as follows:

## I. INTRODUCTION

This action arises from the failure by Norco, Inc. ("Norco") to provide timely notice of a June 11, 2022 personal-injury accident and the ensuing Washington lawsuit brought by claimant David Spargur ("Spargur"). Norco learned of the accident within days of it occurring and was served with Spargur's summons and complaint in July 2022. Yet Norco never notified Great American, one of its excess carriers, of the accident or the lawsuit at any point prior to the entry of default in December 2022 and the Washington court's final judgment exceeding $6 million in February 2024.

Instead, despite clear policy language requiring notice to its carriers directly, Norco apparently forwarded the summons and complaint only to its broker, the Leavitt Group ("Leavitt"), which likewise failed to notify any carrier, including Great American. Nothing in the policies provide that notice to Norco's broker constitutes notice to Great American, and submitting materials to Leavitt did not satisfy Norco's contractual obligation to provide notice to its insurers. Norco also took no further action to defend itself or involve its insurers in the underlying lawsuit by Spargur. Norco's primary carrier, Zurich American Insurance Company ("Zurich"), was eventually notified of the underlying lawsuit, and retained counsel in an effort to set aside the default judgment. But the Washington court rejected that request, finding Norco's neglect inexcusable and emphasizing that Norco had ample opportunity to notify its insurers before any judgment was entered. Norco then unilaterally satisfied the $6.4 million judgment in February 2024 without seeking or obtaining Great American's consent.

Norco did not provide any notice to Great American until May 13, 2024 – nearly two years after the accident and months after entry of default and final judgment. By the time notice finally reached Great American, it had been deprived of any opportunity to investigate, defend, participate in the underlying litigation, or mitigate the loss. After the Washington court denied its motion to vacate, Norco paid the judgment without notice to or consent by Great American. Nearly a year later, Norco demanded reimbursement from Great American under an excess policy it never timely invoked, prompting this coverage action.

Norco now asserts a single counterclaim against Great American for breach of contract. As discussed in greater detail below, that claim cannot stand and should be dismissed. Norco's untimely notice, unilateral payment of the judgment, and admitted failure to comply with multiple conditions precedent bar coverage as a matter of law. As a result, this Court should dismiss Norco's breach of contract counterclaim and enter judgment on the pleadings on Great American's declaratory relief claim.

## II. UNDISPUTED STATEMENT OF FACTS

Norco is an Idaho corporation that sells and rents durable medical equipment and medical gases. *See* Doc. 5, ¶1 of Counterclaim. Great American issued Excess Policy No. XS 2260340-04 to Norco for the July 1, 2021 – July 1, 2022 policy period (the "Policy"). *Id.*, ¶2. The Policy sits above a primary commercial general liability policy issued by Zurich, Policy No. GLO 0381400-06. *Id.*, ¶3.

Norco purchased both policies, either directly or indirectly, through Leavitt.[1] *Id.*, ¶5. Norco alleges that at a June 30, 2022 "Claims Advocacy" presentation, Leavitt advised that claims should

[1] While not a relevant fact to this motion, as a surplus lines carrier Great American is statutorily required to place insurance through a surplus lines broker. *See*, Idaho Code § 41-1214.

be submitted to Leavitt and that Leavitt would report them to the appropriate insurers. *Id.* Nothing in the Policy provides that notice to Leavitt constitutes notice to Great American, nor does Norco so allege. *See generally* Doc. 1-6 (the Policy).

Spargur allegedly sustained personal injury after renting a wheelchair from Norco in Washington State in June 2022. *See* Doc. 5, ¶6 of the Counterclaim. Spargur filed suit against Norco in King County Superior Court on July 8, 2022. *Id.* Norco does not allege that it provided notice of the accident or lawsuit to Great American, or to any insurer, at that time. *See id.* at *passim*. Rather than notifying any insurer, Norco forwarded the lawsuit to Leavitt on December 8, 2022 – months after suit was filed and only four days before the Washington court entered default on December 12, 2022. *Id.* ¶5-6.

Following the default, Spargur obtained a series of increasing default judgments, culminating in a judgment on February 12, 2024 totaling $6,086,782.99 plus costs and interest. *Id.* ¶6. Zurich first learned of the judgment in May 2024, nearly two years post-accident and more than a year after the initial default judgment. *Id.* ¶7. Zurich appointed counsel under a reservation of rights and attempted to set aside the judgment, but the Washington court denied the motion. *Id.* Without the knowledge or consent of Great American, Norco paid $6,410,472 to satisfy the judgment on or about August 13, 2024. *Id.* ¶8. Norco then sought reimbursement from Zurich on May 28, 2025, and Zurich later paid its $1 million primary limit on July 1, 2025. *Id.* ¶11

Norco did not seek reimbursement of its payment from Great American until July 17, 2025 – over three years after the accident, more than eighteen months after the initial default judgment, and nearly a full year after Norco voluntarily satisfied the judgment. *Id.* ¶13. In response, Great American initiated the instant action to determine its rights and obligations under the excess policy. *Id.*

Norco asserts a single counterclaim for breach of contract, alleging Great American was obligated to pay its $5 million excess limit "within thirty days" of receiving notice of the claim or to pay its limits into court.[2] *Id.* ¶14. There is nothing in the Policy that imposes an obligation upon Great American to pay policy limits within 30 days after notice of claim, particularly where, as here, coverage is barred by Norco's failure to comply with multiple conditions in the Policy. *See* Doc. 1-6.

## III. LEGAL STANDARDS

### A. Fed. R. Civ. P. 12(b)(6)

In Idaho, "[a] motion to dismiss made pursuant to Fed. R. Civ. P. 12(b)(6) tests the sufficiency of a party's claim for relief." *Panuski v. Idaho*, 2016 WL 3581997, at *1 (D. Idaho June 28, 2016). "When considering such a motion, the Court's inquiry is whether the allegations in a pleading are sufficient under applicable pleading standards." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Garriott v. Kootenai Hosp. Dist.*, 2016 WL 3746470, at *1 (D. Idaho July 8, 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is facially plausible when the pleaded facts permit the court to reasonably infer that a party is liable for the misconduct alleged. *Id.* (citing *Bell Atl.*, 550 U.S. at 560). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When the facts asserted do no more than suggest that liability is possible, the complaint does not reach the level of plausibility required to state a valid claim for relief. *Id.*; *see also Panuski*¸ 2016 WL 3581997, at *1. Courts "are not

[2] Despite Norco demand for payment of its "policy limits", the limits of the Great American Policy have been eroded by other claim payments with $2,978,060.58 in limits remaining.

bound to accept as true a legal conclusion couched as a factual allegation." *Panuski*, 2016 WL 3581997, at *1 (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)).

The Court must apply a two-step framework to determine whether a complaint satisfies the plausibility standard. *Garriott*, 2016 WL 3746470, at *3. First, it disregards legal conclusions and accepts as true all well-pleaded factual allegations, drawing reasonable inferences in drafter's favor. *Id.* (citing *Ashcroft*, 556 U.S. at 680). Second, the Court evaluates those factual allegations to determine whether they plausibly state a claim for relief. *Id.*

**B. Fed. R. Civ. P. 12(c)**

Rule 12(c) of the Federal Rules of Civil Procedure states: "After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." "The standard governing a Rule 12(c) motion for judgment on the pleadings is 'functionally identical' to that governing a Rule 12(b)(6) motion." *N. Mgmt. Svcs., Inc. v. Navigators Spec. Ins. Co.*, 608 F.Supp.3d 996, 1000 (D. Idaho 2022) (citing *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n. 4 (9th Cir. 2011)). "For purposes of the motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989). Judgment on the pleadings is appropriate only when the pleadings themselves show that there are no disputed material facts, and the moving party is entitled to judgment as a matter of law. *Id*. It is not appropriate if the court must look beyond the pleadings to resolve disputed issues; in that circumstance, the motion must be treated as one for summary judgment. *Id.*

"When considering a motion for judgment on the pleadings, th[e] court may consider facts that 'are contained in materials of which the court may take judicial notice.'" *Heliotrope Gen., Inc.*

*v. Ford Motor Co.*, 189 F.3d 971, 981 n. 18 (9th Cir. 1999) (citation omitted). A court may take judicial notice of public records, including filings and orders from other court proceedings. *N. Mgmt*, 608 F.Supp.3d at 1000.

**C. Insurance Policy Interpretation**

"It is well settled that a federal court exercising diversity jurisdiction must apply substantive state law." *Am. Triticale, Inc. v. Nytco Servs., Inc.*, 664 F.2d 1136, 1141 (9th Cir. 1981) (internal citations omitted). Under Idaho law, "when an insurance policy has language that 'is clear an unambiguous, coverage must be determined as a matter of law, according to the plain meaning of the words used.'" *Northland LLC v. Contractors Bonding & Ins. Co.*, 603 F.Supp.3d 933, 938 (D. Idaho 2022) (quoting *Farm Bur. Mut. Ins. Co. v. Eisenman*, 286 P.3d 185, 188 (Idaho 2012)). Idaho courts look to the plain meaning of the words contained in the policy to determine if there are any ambiguities. *Cascade Auto Glass, Inc. v. Idaho Farm Bur. Ins.*, 115 P.3d 751, 754 (Idaho 2005).

Whether a policy provision is ambiguous is a question of law. *See Trinity Universal Ins. Co. v. Kirsling*, 73 P.3d 102, 105 (2003). A provision is ambiguous only if it is reasonably susceptible to "conflicting interpretations." *North Pac. Ins. Co. v. Mai*, 939 P.2d 570, 572 (Idaho 1997). When assessing whether a policy is ambiguous, courts apply ordinary contract-construction principles: they look to the plain language of the policy, read terms in context, and give common, non-technical words their everyday meaning unless the policy shows a contrary intent. *Scout, LLC v. Truck Ins. Exch.*, 434 P.3d 197, 204 (Idaho 2019). "The burden is on the insurer to use clear and precise language if it desires to restrict the scope of its coverage." *Id.* If a provision is ambiguous, it is construed in favor of coverage and against the insurer because insurance policies are contracts of adhesion not subject to negotiation. *Id.*

## IV.   CHOICE OF LAW

As a preliminary matter, this Court should apply Idaho law to Norco's counterclaim. A federal court sitting in diversity applies the forum state's choice of law rules. *See Safeco Ins. Co. of Oregon v. McPartland*, 536 F.Supp.3d 777, 784 (W.D. Wash. 2021) (citing *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002)). Idaho follows the "most significant relationship" test set out in § 188 of the Restatement (Second) of Conflict of Laws to determine which state's law governs the interpretation of an insurance contract. *Safeco Ins. Co. of Am. v. Russell*, 787 F.Supp.3d 1146, 1154 (D. Idaho 2025). Under that framework, courts consider: "(a) the place of contracting; (b) the place of the contract's negotiation; (c) the place of performance; (d) the location of the contract's subject matter; and (e) the parties' domicile, residence, nationality, place of incorporation, and place of business." *Id.* (citing *Seubert Excavators, Inc. v. Anderson Logging Co.*, 889 P.2d 82, 85-86 (Idaho 1995)). The analysis does not turn on the number of contacts, but on which state has the most significant relationship to the transaction and the parties. *Patton v. Cox*, 276 F.3d 493, 496 (9th Cir. 2002).

Applying these principles, Idaho law governs. The Policy and the Zurich primary policy were issued to Norco at its Boise, Idaho address (1125 W. Amity Road, Boise, ID 83705), and nothing in the Counterclaim or the documents referenced therein suggests the Policy was negotiated or executed in Washington. The Policy contains Idaho surplus-lines notice and no Washington regulatory forms, confirming that it was written and delivered as an Idaho insurance contract.

Norco's performance obligations under the Policy, including paying premiums, reporting claims, and cooperating with the insurer, necessarily occur from its Idaho principal place of business. Great American's performance obligations, in turn, are directed to Norco in Idaho. With

respect to the contract's subject matter, the Policy covers Norco's multistate business operations, and the Counterclaim identifies no fact suggesting that the insured risk is uniquely located in Washington or tied predominantly to Washington. The accident occurred in Washington, but that is not the subject matter of the insurance contract – it is merely the situs of the underlying tort.

Norco is headquartered and domiciled in Idaho, and Great American is not domiciled in either Idaho or Washington. Norco's Idaho domicile is therefore the only meaningful party-location contact. These facts establish Idaho as the state with the most significant relationship to the insurance contract.

Finally, although the underlying lawsuit proceeded in Washington, the coverage dispute arises from Norco's conduct in Idaho – specifically, its failure to provide notice, failure to comply with conditions precedent, and later demand for reimbursement under an Idaho-issued policy. Those are the contacts that matter for contract-interpretation purposes, and they overwhelmingly point to Idaho. Accordingly, Idaho law governs the Counterclaim and interpretation of the Policy.

## V. LEGAL ARGUMENT & ANALYSIS

### A. Norco Fails to State a Plausible Claim for Breach of Contract.

Norco's counterclaim rests on twin theories – that Great American breached the Policy by failing to pay its $5 million excess limit "within thirty days" of receiving notice of the Spargur claim, or by failing to pay its limits into the Court. *See* Doc. 5, ¶14 of Counterclaim. The counterclaim fails because nothing in the Policy imposes either obligation. The Policy contains no provision requiring Great American to pay policy limits within thirty days of receiving notice of a claim. *See generally* Doc. 1-6 (the Policy). Likewise, the Policy imposes no duty to pay limits into the Court simply because an insured submits a request for coverage. *Id.* Thus, any alleged breach of contract theory premised on such allegations necessarily fails as a matter of law.

Additionally, the counterclaim fails for a more fundamental reason: Norco admits it did not comply with multiple conditions precedent that govern coverage under the Policy. Norco admits the Great American Policy "is a 'follow form' policy, whereby it adopts as its own the operative language of the underlying primary policy; here, Zurich policy GLO 0381400-06." Doc. 5, ¶9 of Counterclaim. Under the Zurich primary policy, an insured must, among other things: (1) provide notice of a claim and any ensuing lawsuit "as soon as practicable"; (2) "immediately" forward all suit papers; and (3) refrain from making any voluntary payment without Great American's consent. *See* Doc. 1-7 (Zurich Policy), Section IV(2)(a)–(d) (p. 51). Norco's own pleadings confirm that it did not satisfy any of these conditions precedent to coverage.

First, Norco did not provide notice of the Spargur claim "as soon as practicable" nor did it "immediately" forward suit papers as required under the Zurich primary policy, which form the Great American Policy follows. As admitted in the Counterclaim, Norco did not provide notice of the Spargur claim until May 2024. *See* Doc. 5, ¶7. This was nearly two years after the June 2022 underlying personal injury and the lawsuit filed in July 2022, *see id.* at ¶6, approximately one and a half years after the default was entered in December 2022, *see id.*, and several months after the default judgment of over $6 million was entered in February 2024, *see id.* There is no doubt Norco was aware of the Spargur claim and the lawsuit as these facts were already found by the underlying court in its August 13, 2024 Findings of Fact and Conclusions of Law Denying Defendant's Motion to Vacate Default Judgement:

> 2. Norco was properly served through its registered agent on July 15, 2022. On July 18, 2022, its registered agent provided the summon and complaint to Norco's CEO. A variety of corporate officers and employees within Norco knew of the summons and complaint. However, as the result of high staff turnover and confusion over internal responsibilities, no one at Norco took action to ensure that it responded to the lawsuit.
>
> 3. Norco provided the summons and complaint to its insurance broker on

> December 8, 2022. There is no evidence that any Norco employee requested that the broker notify the insurance carrier of the lawsuit.

*See* Doc. 1-5 (Findings of Fact and Conclusions of Law).

As such, the undisputed allegations and evidence confirm Norco did not comply with the notice provisions in the Zurich primary policy which again form the Great American Policy follows. Under Idaho law, Great American is not required to demonstrate prejudice before enforcing a notice condition. *See, e.g., N. Mgmt.*, 608 F. Supp. 3d at 1001 ("Idaho law does not require that an insurer show prejudice before denying a claim.") (internal citation omitted); *Sparks v. Transamerica*, 141 F.3d 1179 (9th Cir. 1998) (applying Idaho law) (holding that "a showing of prejudice is not required [under Idaho law] where an insured breaches a notice provision of the policy."); *Viani v. Aetna Ins. Co.*, 501 P.2d 706 (Idaho 1972) (holding that a showing of prejudice is not required where an insured breaches a notice provision of the policy) (*overruled on other grounds by Slovjaczek v. Est. of Puckett*, 565 P.2d 564 (Idaho 1977)). This rule applies equally to excess carriers. *See N. Mgmt. Servs.*, 608 F. Supp. 3d at 1001-03.

Second, Norco cannot circumvent the notice requirements to its insurers by suggesting it provided notice to its own broker instead (particularly when it admits the broker never forwarded anything to the insurers). *See* Doc. 5 at ¶5 of the Counterclaim. Nothing in the Zurich primary policy or the Great American Policy provides that sending materials to Leavitt constitutes notice to Great American. *See generally* Doc. 1-6 (Policy) and 1-7 (Zurich policy). Where the insurer does not act in a manner to invite understanding that notice to the broker suffices, said notice does not constitute notice to the insurer. *See, e.g., Raby v. Am. Int'l Specialty Lines Ins. Co.*, 268 F. App'x 566, 567 (9th Cir. 2008). Other courts have similarly held that notice to the insured's broker does not constitute notice to the insurer. *See, e.g., Strauss Painting, Inc. v. Mt. Hawley Ins. Co.*, 24 N.Y.3d 578, 594, 26 N.E.3d 218, 227 (2014) (noting that insurer and broker do not have

relationship sufficiently close to suggest that service to the broker was effectively service to the insurer); *Evanston Ins. Co. v. Cheetah, Inc.*, 2016 WL 4494440, at *4 (S.D. Tex. Aug. 26, 2016) (finding where the agent is the insured's agent and not the insurer's agent, notice to the agent is not notice to the insurer); *Elkins v. Am. Intern Spec. Lines Ins. Co.*, 611 F.Supp.2d 752, 767 (S.D. Ohio 2009) (internal citation omitted)(reiterating notice to the insured's agent or broker does not constitute notice to the insurance company when that agent or broker is not expressly granted such authority by the insurance company).

The alleged marketing or "claims advocacy" presentation by Leavitt cannot rewrite the Policy's clear and unambiguous notice provisions. *See Walter E. Wilhite Revocable Living Trust v. Northwest Yearly Meeting Pension Fund*, 916 P.2d 1264, 1270 (Idaho 1996) (acknowledging the well-established rule under Idaho law that "oral and written statement are inadmissible to contradict or vary unambiguous terms" in a contract); *Pierce Cnty. Hotel Employees and Restaurant Employees Health Trust v. Elks Lodge, B.P.O.E. No. 1450*, 827 F.2d 1324, 1327 (9th Cir. 1987) (noting extrinsic evidence cannot be used "to contradict a clear contract").  The Policy defines You as the Named Insured only.  Here that is Norco, not Leavitt.  The Policy requires notice "as soon as practicable" and the immediate forwarding of all suit papers – obligations that run to the insured, not the broker pursuant to the express language of the Policy.  Because Norco did not provide notice to Great American "as soon as practicable" or "immediately" forward all suit papers as required, it failed to comply with the notice conditions precedent to coverage allowing Great American to deny coverage under the Policy.  As such, its breach of contract counterclaim fails as a matter of law.

Third, Norco made a voluntary payment.  Norco expressly alleges that it unilaterally paid the $6.4 million judgment on August 13, 2024, without seeking or obtaining consent from Great

American. *Id.* ¶8 of Counterclaim. The Zurich primary policy, which again the Great American Policy follows, includes a "no voluntary payments" clause which bars coverage for expenses the insured incurs on its own initiative. *See* Doc. 1-7 at p. 51 (Section IV(2)(d)). Shortly after the denial of the Motion to Set Aside the Default Judgment, and while defense counsel and the insurers were contemplating appellate rights, Norco voluntarily paid the judgment without the consent of the insurers. *See* Doc. 5, ¶8. Great American was not even aware of this voluntary payment until several months after it had been made. *Id.*, ¶13.

Courts have upheld a similar "voluntary payment" provisions. *See, e.g.*, *Blue Cross of Idaho Health Serv., Inc. v. Atl. Mut. Ins. Co.*, 2011 WL 162283, at *22 (D. Idaho Jan. 19, 2011) (where an insured chose not to tender defense to its carrier, all pre-tender costs incurred were voluntary payments, and therefore not reimbursable); *see also Landmark Am. Ins. Co. v. Taisei Constr. Corp.*, 2022 WL 17002157, at *8 (C.D. Cal. Sept. 30, 2022) ("The general validity of no-voluntary-payment provisions in liability insurance policies is well established" and "[s]uch provisions are enforced in the absence of economic necessity, insurer breach, or other extraordinary circumstances") (internal citations and quotations omitted). Because payment of the judgment was made voluntarily without Great American's consent, the "no voluntary payments" provision precludes coverage for this claim.

Taken as true, Norco's own allegations in its Counterclaim establish that it failed to satisfy numerous conditions precedent to coverage. These failures – untimely notice, failure to forward suit papers, and voluntary payment of the judgment – bar coverage and foreclose any plausible breach of contract counterclaim. The counterclaim therefore fails to state a viable claim and should be dismissed with prejudice.

**B. Judgment on the Pleadings in Warranted on Great American's Claim for Declaratory Relief.**

For the same reasons that Norco's counterclaim fails, the pleadings establish that Great American is entitled to judgment as a matter of law on its declaratory relief claim. The Counterclaim and the documents it incorporates admit that Norco did not provide notice "as soon as practicable," did not forward suit papers "immediately," and voluntarily satisfied the $6.4 million judgment without insurer consent. Those undisputed facts demonstrate that Norco failed to satisfy multiple conditions precedent that govern coverage under the Policy. The Court is not required to accept Norco's attempted recharacterization of these undisputed facts where they are contradicted by the pleadings and the documents incorporated into them. *See generally, Panuski and Garriott, supra.* Under Idaho law, an insurer has no contractual obligations where the insured has not met those conditions. *See N. Mgmt.*, 608 F.Supp.3d at 1001 (holding that an insurer may deny coverage when the insured fails to satisfy conditions precedent to coverage).

Because the material facts relevant to coverage are drawn entirely from Norco's own allegations and the unambiguous policy language already before the Court, no factual dispute precludes judgment. The pleadings therefore confirm that Great American's coverage obligations were never triggered and that it is entitled to a declaration that the Policy affords no coverage for the judgment enter in the underlying lawsuit.

## VI. CONCLUSION

Norco's counterclaim identifies no contractual provision that Great American allegedly breached and instead relies on a payment obligation that does not appear anywhere in the Policy. Its own allegations confirm that it failed to satisfy any of the conditions precedent that must occur before any duty under a Policy can arise. Because the counterclaim is legally deficient on its face and cannot be cured by re-pleading without contradicting Norco's admitted facts, dismissal is

warranted. For the same reasons, the Court should likewise enter judgment on the pleadings on Great American's declaratory relief claim.

WHEREFORE, Great American respectfully requests that the Court dismiss Norco's Counterclaim in its entirety with prejudice, grant judgment on the pleadings on Great American's declaratory relief claim, award Great American its costs as permitted by law, and grant such other and further relief as the Court deems just and proper.

Dated this 25th day of November 2025.

CLYDE & CO US LLP

By: ***/s/ Justin S. Hepworth***
Justin S. Hepworth, Esq.
*Attorney for Plaintiff Great American E&S Insurance Company*

## CERTIFICATE OF SERVICE

      I hereby certify that, on November 25, 2025, a true and correct copy of the foregoing was electronically filed and served via CM/ECF which sent a Notice of Electronic Filing to the following:

Stephen R. Thomas, Esq.
Dane Bolinger, Esq.
Kenneth C. Shumard, Esq.
Hawley Troxell Ennis & Hawley, LLP
877 W. Main Street, Suite 200
P.O. Box 1617
Boise, ID 83701-1617
Phone: (208) 344-6000
Facsimile: (208) 954-5274
sthomas@hawleytroxell.com
dbolinger@hawleytroxell.com
kshurmard@hawleytroxell.com
***Counsel for Norco, Inc.***

                                      */s/ Justin S. Hepworth*
                                      Justin S. Hepworth